## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| LORRETTA LYNN ERIKSEN,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC.,<br><br>Defendant. | CV 14-155-BLG-SPW-CSO<br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Lorretta Lynn Eriksen ("Eriksen") filed this wrongful termination action alleging violations of the Family Medical Leave Act ("FMLA") (Count One), and violations of Montana's Wrongful Discharge from Employment Act ("WDEA") (Count Two).

Although the Defendant named in the Complaint is "Wal-Mart Associates, Inc.", Defendant states that the correctly named party is Wal-Mart Stores, Inc. ("Wal-Mart"), and Plaintiff apparently agrees. Now pending is Wal-Mart's summary judgment motion. *ECF No. 23*. Having considered the parties' submissions and the applicable law, the Court recommends that the motion be granted in part and denied in part, as discussed below.

## I.   BACKGROUND

Eriksen began working for Wal-Mart as an overnight stocker on July 2, 2009. *ECF No. 32* at 2. Her duties included "zoning work areas, arranging and organizing merchandise and supplies, stocking and rotating merchandise, removing damaged or out-of-date goods, setting up, cleaning, and organizing product displays, signing and pricing merchandise appropriately, and securing fragile and high-shrink merchandise." *Id.*; *see also ECF No. 24-3* at 1. A stocker must be able to perform the following physical tasks:

> [M]ove up and down a ladder; grasp, turn, and manipulate objects of varying sizes and weight; reach overhead and below the knees, including bending, twisting, pulling, and stooping; and move, lift, carry, and place merchandize and supplies weighing up to 50 pounds without assistance.

*ECF No. 32* at 2.

On or about July 3, 2013, Eriksen reported to Jill Hegle ("Hegle"), in Human Resources, that she had suffered a workplace injury. Hegle filled out an incident report and gave Eriksen an Associate Incident Report, which Eriksen completed the same day. Hegle also gave Eriksen FMLA leave request forms. *Id.* at 7–8.

Sedgwick Claims Management Services, Inc. ("Sedgwick"), Wal-Mart's third party leave administrator, sent Eriksen a letter on September 6, 2013, indicating that on September 5, 2013, they had become aware of her request "to take Family Medical Leave beginning on July 08, 2013 due to a serious health condition that makes [her] unable to perform the essential functions of [her] job." *ECF No. 27* at 21. The letter indicated that Eriksen needed to complete and return the Medical Authorization for Release of Information form as well as the certification form enclosed in the letter. *Id.*

On September 26, 2013, Sedgwick sent a second letter to Eriksen requesting additional information regarding the "anticipated frequency and/or duration of incapacity or treatment schedule." *Id.* at 47; *ECF No. 32* at 17. Sedgwick requested that they receive the additional information by October 8, 2013. *ECF No. 27* at 47. During her deposition, Eriksen indicated that she did not know when she received the second letter but that "it was way later than September 26th." *ECF No. 24-3* at 98. On October 9, 2016, a Sedgwick representative called Eriksen regarding the request for additional information. *ECF No. 32* at 17. On October 10, 2013, Sedgwick informed Eriksen that her

request for FMLA leave was denied due to an incomplete certification. *ECF No. 27* at 49.

Prior to the denial of Eriksen's FMLA leave, Eriksen failed to show up for her shift on July 21, 2013, and did not call the Associate Information Line to report the absence, as required by Wal-Mart's attendance policy. *ECF No. 24-3* at 6; *ECF No. 32* at 19. Eriksen had previously received her first "written coaching" for attendance issues on August 14, 2012, and received her second "written coaching" for attendance issues on November 27, 2012. *Id.* at 18. A "written coaching" is the method by which Wal-Mart indicates to its employees that the employee's job performance "fails to meet the reasonable expectations and standards for all employees in the same or similar position or if [the employee's] conduct violates a company policy." *ECF No. 24-3* at 7. This includes violations of the attendance policy. *Id.* 5–6.

When Eriksen received her third written coaching for attendance issues on July 21, 2013, she was instructed that, if her behavior continued, the next level of action would be termination. *Id.* at 11.

On October 5 and 6, 2013, Eriksen again missed her scheduled shifts and did not call the Associate Information Line, but instead called

only Sedgwick. *ECF No. 32* at 20. Wal-Mart terminated Eriksen's employment on October 19, 2013, for violating the attendance policy. *Id.* at 20–21.

## II.   **PARTIES' ARGUMENTS**

Wal-Mart argues that it is entitled to summary judgment on both Counts of the Complaint. *ECF No. 24.*

As to Count One, Wal-Mart presents three arguments. First, Wal-Mart argues that it complied with FMLA notice requirements because it posts notices outside the breakroom and because Eriksen was provided with FMLA forms when she reported her condition to Human Resources. *Id.* at 6–7. Second, Wal-Mart argues Eriksen was not entitled to FMLA leave because she failed to provide the necessary medical certification. *Id.* at 7. Wal-Mart argues that after Sedgwick identified Eriksen's initial certification as deficient, it provided her twelve days to cure the deficiencies but that Eriksen still failed to submit medical documentation sufficient to discern the expected frequency and duration of her requested leave. *Id.* at 8. It argues that as a result of the insufficient medical documentation, Sedgwick's denial of Eriksen's FMLA leave request was proper. *Id.*

Third, Wal-Mart argues that Eriksen was not prejudiced by any alleged interference with her FMLA leave because she could not perform the essential functions of her position. *Id.* at 9. It argues that Eriksen admitted that she could not perform the essential functions of her position "during the period of July 3, 2013 until her termination on October 19, 2013" and that "even today, she would be unable to perform her duties or the duties of a 'substantially equivalent position.' " *Id.* at 10. Wal-Mart argues that as a result, "[e]ven if Eriksen was entitled to twelve weeks of unpaid leave under the FMLA . . . Wal-Mart was not obligated to return her to work because Eriksen was (and still is) unable to perform the essential functions of her position or a substantially equivalent position." *Id.* at 11.

As to Count Two, Wal-Mart seeks summary judgment, arguing that: (1) Eriksen failed to timely appeal her termination under Wal-Mart's internal grievance procedure; (2) Wal-Mart had good cause to terminate Eriksen for violations of Wal-Mart's attendance policies; and (3) Wal-Mart at all times complied with its employment policies. *Id.* at 12–16.

In response, Eriksen argues that Wal-Mart is not entitled to summary judgment on the FMLA claim because Wal-Mart "has supplied no evidence that it complied" with FMLA's notice requirements. *ECF No. 29* at 3. Eriksen argues that Wal-Mart has not shown that in addition to posting FMLA rights in a conspicuous place, it provided "a general notice of FMLA rights in an employee handbook" and duplicated "all information found in WHD Publication 1420 in the posters and handbooks." *Id.* She argues that she submitted FMLA certification documents to Wal-Mart's Human Resources Department on July 10, 2013, but that neither Wal-Mart nor Sedgwick retained copies. *Id.* at 4. She argues that the only way she "found out about the possibility of getting FMLA was from her co-workers." *Id.* at 5 (*citing Lorrie Depo., 134:22 to 135:15).*[1]

Eriksen argues that she submitted proper medical certification because, although she applied for intermittent leave, the doctor who

_____

[1] Although Eriksen's brief cites to pages of her deposition, this deposition was not attached to her Response Brief, or to the Statement of Disputed Facts. Nor was it filed after the Court gave additional time "to file the portions of documents specifically referenced in either the brief or the Statement of Disputed Facts." *See ECF 34.* Some, but not all, of the deposition pages cited by Ericksen were located among the documents filed by Wal-Mart.

filled out her medical certification forms indicated that she should be

approved for continuous leave.  *Id.* at 6.  She argues that the "only

logical conclusion one could make after receiving this information is

that [she] qualified for continuous FMLA leave." *Id.*  Eriksen argues

that the plain language of her certification was ignored.  *Id.*  As a

result, Eriksen argues, Oumou Diop ("Diop"), a Sedgwick

representative, incorrectly requested that she provide information

regarding the frequency and duration of treatment.  *Id.*  She also argues

that if Diop or anyone at Wal-Mart had questions about her condition,

they could have requested a second opinion, but did not do so.  *Id.*

Eriksen further argues that Wal-Mart did not provide enough

time for her to respond to the request for additional information

because the letter requesting the information did not get mailed until

September 27, 2013, and Eriksen did not receive it until October 4,

2013, at the earliest.  *Id.* at 7.  She argues that she made five attempts

to comply with the request, but was unable to fax the documents to

Sedgwick because she was given an incorrect fax number.  *Id.*  She also

argues that she left several messages for Diop, but that Diop did not

return her calls until October 9, 2013, which was the day after the

clarification documents were due. *Id.* She argues this demonstrates that she was not given adequate time to comply with the perceived defect in her medical certification. *Id.* at 8.

Next, Eriksen argues that Wal-Mart's actions prejudiced her because she was put to work doing tasks she was not permitted to do, and was fired for not showing up for work that she couldn't possibly do without the 12 weeks of FMLA leave. *Id.* at 9. She argues that she was prejudiced by not having a chance to get the rest her doctor ordered, which might have healed her. *Id.* She argues that if she had been granted FMLA leave as requested, she may have been able to recover from her injury. *Id.* at 10. Eriksen argues she was also prejudiced by Wal-Mart when she was terminated because the termination deprived her of the medical insurance she would have had if she was granted FMLA leave. *Id.* at 11.

Regarding the WDEA claim (Count Two), Eriksen argues that she complied with Wal-Mart's grievance procedure because she did not understand the procedure when she was terminated but took action immediately when she realized she had a right to appeal. *Id.* at 11–12. She argues that regardless of the timeline of the appeal, an

investigation was still opened and her termination was investigated, so she should not barred from asserting her WDEA claim on that basis. *Id.*

Finally, Eriksen argues that she was not terminated for good cause, because if Wal-Mart had followed the law and approved her FMLA leave, she would not have been terminated. *Id.* at 13. She argues that Wal-Mart "made no secret that the absences that should have been covered by FMLA were used against her[,]" and that "[n]o worse cause exists for terminating someone than wrongly denying FMLA leave." *Id.* She further argues that Wal-Mart has an FMLA policy, and that "Wal-Mart violated its FMLA policy when it failed to provide notice to [Eriksen] and when it interfered with her right to FMLA leave." *Id.*

In reply, Wal-Mart argues that Eriksen did not comply with Local Rule 56.1 because instead of filing her Statement of Disputed Facts simultaneously with her Response Brief, she filed a second, and longer, Statement of Disputed Facts five days later. *ECF No. 33* at 2–4. Wal-Mart also argues the local rule was violated because Eriksen did not provide pinpoint citations to "a specific pleading, deposition, answer to

interrogatory, admission, or affidavit before the Court to oppose each fact[.]" *Id.*

With respect to the FMLA claim, Wal-Mart argues that Eriksen should not be able to expand her claim beyond her Complaint, which only claims that Wal-Mart violated the FMLA when it "failed to post notice of its duties under the FMLA and failed to provide Ms. Eriksen with such notice." *Id.* at 5. Wal-Mart argues that Eriksen does not dispute that it posted an FMLA notice in the hall, nor does she dispute that Wal-Mart provided Eriksen with FMLA forms when she first reported her condition. *Id.* Wal-Mart argues that any alleged failure to comply with technical notice requirements also fails because Eriksen has not shown any resulting prejudice because she received an FMLA packet right after her injury and was clearly on notice of her FMLA rights. *Id.* at 6.

Wal-Mart argues that Eriksen's assertion that she submitted a July 2013 FMLA request fails because she does not provide any admissible evidence to support the assertion. *Id.* It argues that based on the FMLA request that Eriksen did submit, Eriksen requested intermittent leave. *Id.* at 7. Wal-Mart argues that Sedgwick was not

obligated to assume Eriksen was seeking continuous leave merely because her doctor indicated that the requirement of not lifting heavy objects would be ongoing. *Id.* Wal-Mart argues that Sedgwick's request for additional information was appropriate based on the information contained in the FMLA application. *Id.* Wal-Mart argues that because "Eriksen failed to submit medical documentation sufficient to discern the expected frequency and duration of her requested intermittent leave, Sedgwick's denial was proper under the FMLA." *Id.* Wal-Mart argues that Eriksen cannot shift the blame to cure the defects in her application to Wal-Mart because the FMLA expressly places that obligation on Eriksen. *Id.* at 8.

Next, Wal-Mart argues that Eriksen was not prejudiced by the denial of her FMLA request. *Id.* at 8–9. It argues that from July 3, 2013, until her termination, Eriksen was unable to perform the essential functions of her position and that even today she remains unable to perform the duties or the duties of a substantially equivalent position. *Id.* at 9. As a result, Wal-Mart argues that she has failed to demonstrate she was prejudiced by the denial of FMLA leave. *Id.*

In reply to Eriksen's arguments on the WDEA claim, Wal-Mart argues that Eriksen's untimely appeal bars her claim. *Id.* at 10. Wal-Mart argues that Eriksen received and signed her Termination Appeal Notice, which informed her of Wal-Mart's appeal procedures, and that her failure to comply and exhaust the appeal process is a complete bar to her WDEA claim. *Id.*

Wal-Mart argues that it terminated Eriksen for good cause because she violated Wal-Mart's attendance policy. It argues that Eriksen cannot now circumvent the FMLA through the WDEA by "claiming, for the first time, she bases this claim on Wal-Mart's FMLA Policy when she has not even submitted it into evidence." *Id.* at 11. Wal-Mart argues that "because the FMLA provides its own separate remedy and procedure, the WDEA does not apply to FMLA claims." *Id.* at 11–12.

## III. <u>LEGAL STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility

of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from

the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   ANALYSIS

### A.   WAL-MART'S CHALLENGE TO ERIKSEN'S STATEMENT OF DISPUTED FACTS

The Court first addresses Wal-Mart's two challenges to Eriksen's Statement of Disputed facts.  Wal-Mart argues that the Court should disregard Eriksen's Statement of Disputed Facts for violating Local Rule 56.1 as it: (1) was untimely; and (2) did not properly include citations, let alone pinpoint citations, for each disputed fact.  *ECF No. 33* at 2–4.  Here, Eriksen did timely file a Statement of Disputed Facts. But five days later, without the Court's leave, Eriksen filed a second Statement of Disputed Facts, and included additional facts as well as exhibits not included in the first Statement of Disputed Facts.

The Ninth Circuit has "repeatedly held that a motion for summary judgment cannot be granted simply because the non-moving party violated a local rule."  *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1081–82 (9th Cir. 2000).  It is well-settled that cases should be decided on their merits whenever reasonably possible.  *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).

Turning first to Wal-Mart's argument that the second Statement of Disputed Facts should be disregarded as untimely, the Court does not condone violations of the Local Rules that thwart the administration of justice or that work unfair prejudice upon opposing parties. But here, Wal-Mart has neither argued that it suffered prejudice nor shown any actual prejudice resulting from the five-day delay in Eriksen's filing of her second Statement of Disputed Facts. Nor has Wal-Mart moved to strike the filing. Under these circumstances, and without in any manner condoning violations of the Local Rules, the Court here deems it appropriate to review both of Eriksen's statements of disputed facts in considering Wal-Mart's summary judgment motion.

Second, it is true that Eriksen at times failed to comply with the local rule requiring "a pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission or affidavit before the Court to oppose each fact[.]" L.R. 56.1(b)(1)(B). As to some of the facts that Eriksen indicated are disputed, she did not include specific citations to the record. Most of the citations were to items not in the record before the Court. As a result, the Court will review the disputed facts insofar as the Court is able to locate the documents specifically cited.

## B.    COUNT TWO: WDEA CLAIM

Eriksen's WDEA claim is premised on alleged FMLA violations. In her response brief, Eriksen argues that she was terminated for "absences that should have been covered by FMLA[.]" *ECF No. 29* at 13. She argues that she was not terminated for good cause because "[n]o worse cause exists for terminating someone than wrongly denying FMLA leave." *Id.* Next, she argues that Wal-Mart violated its employment policies when it terminated her. She specifically asserts that the policy at issue is the policy regarding FMLA, and argues that "Wal-Mart violated its FMLA policy when it failed to provide notice to [Eriksen] and when it interfered with her right to FMLA leave." *Id.*

The FMLA provides a detailed remedial scheme for damages available to an eligible employee for violations under the act. Recoverable damages include: compensatory damages, interest, liquidated damages, attorney's fees and costs, and other equitable relief such as employment, reinstatement, and promotion. 28 U.S.C. § 2617. Most courts that have considered the question have concluded that FMLA's remedial scheme sets forth the exclusive remedies for an FMLA

violation. *See, e.g., Kastor v. Cash Exp. of Tennessee, LLC*, 2015 WL 128051, *9 (W.D. Ky. Jan. 8, 2015); *McAllister v. Quality Mobile X-Ray Services, Inc.*, 2012 WL 3042972, *7 (M.D. Tenn. July 25, 2012); *Alvarez v. Hi-Temp Inc.*, 2004 WL 603489, *3 (N.D. Ill. Mar. 24, 2004); *Cavin v. Honda of Am. Mfg., Inc.*, 138 F. Supp. 2d 987, 994–998 (S.D. Ohio 2001).

In finding conflict preemption with state statutes, these courts have reasoned that, while the FMLA does contain a savings clause that expressly allows states to provide greater rights for family and medical leave, it does not allow states to provide additional remedies for FMLA violations. *Kastor*, 2015 WL at *9; *McAllister*, 2012 WL at *7. This Court has similarly found that allowing a claimant to bring a state law tort claim to rectify an FMLA violation, and thereby recover damages not recoverable under the FMLA, would circumvent the remedial scheme Congress devised to accomplish the FMLA's objectives. *Hetu v. Charter Commun., LLC*, 2015 WL 2085215 (D. Mont. May 1, 2015).

Eriksen may not assert a WDEA claim premised on FMLA violations, and she has come forth with no evidence regarding other alleged WDEA claims. The FMLA preempts a WDEA claim of this nature. Accordingly, Wal-Mart is entitled to judgment as a matter of

law on this claim and the Court recommends that Wal-Mart's summary judgment motion be granted as to Count Two of the Complaint.

## C.    <u>FMLA CLAIM</u>

The FMLA provides that a qualified employee is entitled to up to twelve weeks of unpaid leave within a twelve-month period if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. Leave must be granted when medically necessary, but an employer may require that an employee provide a medical certification to support an FMLA leave request. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); 29 U.S.C. § 2613. If an employer requests certification, "the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification," and if the certification is incomplete, the employer must provide the employee an opportunity to cure the deficiency. 29 C.F.R. § 825.305. It is the employee's responsibility to furnish a complete and sufficient certification, and if the employee fails to do so, the employer may deny the taking of FMLA leave. *Id.*

To protect the rights granted by the FMLA, the act prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise" an employee's right to take leave. 29 U.S.C. § 2615(a). "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220. Additionally, "[t]he failure to notify an employee of her rights under the FMLA can constitute interference if it affects the employee's rights under the FMLA." *Liston v. Nevada ex rel. its Dept. of Bus. and Indus.*, 311 Fed. Appx. 1000, 1002 (9th Cir. 2009) (unpublished) (citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133–34 (9th Cir. 2003). But the FMLA does not provide relief "unless the employee has been prejudiced by the violation." *Ragsdale*, 535 U.S. at 89.

The Complaint alleges two interference claims under the FMLA, one based on inadequate notice, and one based on Wal-Mart's refusal to authorize FMLA leave, as well as a claim for failure to restore Eriksen to her former position. *ECF No. 3* at 12–13. The Court will address each in turn.

## 1.   **FMLA Notice Requirements**

For a plaintiff to succeed on a claim of interference based on an alleged failure to give the required notice, the plaintiff must show that the alleged failure caused the plaintiff some prejudice, rendering the plaintiff unable to exercise that right in a meaningful way, thereby causing injury. *Stewart v. Sears, Roebuck and Co.*, 2005 WL 545359, at *11 (D. Or. Mar. 7, 2005); *see also Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1056 (D. Ariz. 2003).

Eriksen argues that Wal-Mart violated the FMLA by failing to post notice of its duties under the FMLA and failed to provide Eriksen with such notice. *ECF No. 3* at 12–13.  Eriksen argues that (1) Wal-Mart failed to "provide a general notice of FMLA rights in an employee handbook and to duplicate all information found in WHD Publication 1420 in the posters and handbooks[;]" (2) she submitted "FMLA certification documents, completed by her doctor, to Wal-Mart's HR Department on July 10, 2013[,]" but that "neither Wal-Mart nor Sedgwick kept any copies;" and (3) there is no evidence that anyone at Wal-Mart informed Eriksen of her FMLA rights and that she only found

out about the possibility of FMLA leave from her co-workers. *ECF No. 29* at 3–4.

Wal-Mart argues that there is no dispute that it posted notices regarding the FMLA and that Eriksen received FMLA forms when she first reported her medical condition to the human resources department. *ECF No. 24* at 6–7. Wal-Mart argues that any failure to comply with a technical notice requirements also fails because Eriksen cannot show any resulting prejudice. *ECF No. 33* at 6.

Here, Wal-Mart has demonstrated, and Eriksen does not dispute, that: (1) it posted a notice regarding the FMLA "in the hallway outside the breakroom, directly across from where employees check in before each shift, *ECF No. 24* at 6; *ECF No. 32* at 7; (2) Eriksen received FMLA forms from Hegle when she first reported her injury, *ECF No. 24* at 7; *ECF No. 32* at 8; and (3) Eriksen submitted an application for FMLA leave, *ECF No. 32* at 15–16.

Although Eriksen argues that the September 5, 2013 application for FMLA leave was not the first request she had made, there is no evidence in the record before the Court to support her position. *See*

*ECF No. 32* at 15.  She cites only to portions of her deposition that were not submitted to the Court.

Finally, Eriksen argues that Wal-Mart failed to present evidence demonstrating that it provided sufficient information in the employee handbook and posters. *ECF No. 29* at 3.  But Eriksen has not claimed, nor has she presented any evidence to demonstrate that such an alleged failure interfered with her exercise of, or attempt to exercise, her FMLA rights.  *Stewart*, 2005 WL at *11.  Eriksen's arguments regarding prejudice all stem from the denial of her FMLA leave request, not from alleged deficiencies in the notice provided to her prior to her attempt to invoke FMLA leave rights.

Once the moving party meets its initial burden on a summary judgment motion, the burden shifts to the opposing party to demonstrate that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Here, Wal-Mart has shown both that it posted notice of FMLA rights and that it provided Eriksen with FMLA leave forms once she reported her accident.  *ECF No. 32* at 7–8.  It has additionally shown that Eriksen attempted to invoke any FMLA rights she might have by applying for FMLA leave.  *Id.* at 15–16.  Once she

submitted a request for leave, she received a letter that outlined her rights, the requirements for medical certification, and the consequences of failure to comply. *ECF No. 27* at 21–25. For an FMLA claim based on insufficient notice, Eriksen has the burden to demonstrate a real impairment of her rights and resulting prejudice. *Ragsdale*, 535 U.S. at 90–91. There is no evidence in the record to suggest that Eriksen was prejudiced by the alleged notice deficiencies.

The Court recommends that, based on the lack of prejudice caused by any alleged violation of the FMLA notice provisions, summary judgment be granted for Wal-Mart on Eriksen's claim that Wal-Mart "failed to post notice of its duties under the FMLA and failed to provide Ms. Eriksen with such notice;" *ECF No. 3* at 12–13.

## 2. **FMLA Interference and Failure to Restore to Former Position:**

Eriksen argues that, in addition to her arguments regarding notice, Wal-Mart "interfered with, restrained, and denied Ms. Eriksen's right to twelve (12) weeks of medical leave[.]" *ECF No.* 3 at 12–13. She argues that: (1) she provided proper medical certification and timely submitted it to Sedgwick, *ECF No. 29* at 5–6; (2) Sedgwick's request for additional information was improper, *id.*; (3) Sedgwick did not provide

adequate time for Eriksen to respond to the request for additional information, *id.* at 6–7; (4) the denial of her leave request was improper because Sedgwick made no attempt to contact Eriksen's doctor, or avail itself of its right to a second opinion, *id.* at 6–8; and (5) she was prejudiced by the denial of her application because she was forced to continue working rather than take the leave she requested, and lost her medical insurance after being terminated for the absences she requested be considered FMLA leave, *id.* at 9–11.

The Court finds there are genuine issues of material fact regarding these remaining portions of Eriksen's FMLA claim. For example, there are issues regarding whether the request for leave should have been considered ongoing or intermittent based on the doctor's certification. *ECF No. 27* at 34. In response to question 5 on the doctor's certification form, Eriksen's doctor indicated that the duration of her condition was "ongoing" and, in response to whether the employee would be incapacitated for a single continuous time, the doctor crossed the boxes out and wrote, "Yes, she <u>was</u> – I have not released back to work but Occ. Health may have." *ECF No. 27* at 34. In question 6, the doctor fails to indicate the frequency and duration of

treatment.  *Id.*  Under the space provided to list the dates of scheduled appointments, she writes, "Please contact Physical Therapy and Occupational Health for details → they have not sent me their recommendations."  *Id.*

In drawing all reasonable inferences in favor of Eriksen, as it must at this stage of the proceedings, the Court finds that the answers on the form could reasonably indicate that the leave request should have been interpreted as continuous leave rather than intermittent leave.  Although the form does not include the duration information that would be required for a continuous leave request, Eriksen's application was denied for failure to provide the frequency and duration information under question six, which was necessary for an intermittent leave request.  *ECF No. 32-1* at 33–34.  Thus, there are fact issues regarding whether the application was for continuous or intermittent leave and, because the notice of insufficient certification was based on an intermittent leave request, there are fact issues regarding whether the initial certification was sufficient.

Next, even if the request was properly interpreted as a request for intermittent leave, there are fact issues regarding whether Eriksen had

a reasonable opportunity to cure the alleged deficiency. Eriksen argues that she did not receive the letter requesting additional information until only a few days before the information was due to be returned to Sedgwick. *ECF No.* 29 at 7. And regardless of when she received the information, she alleges they prevented her from complying with the request because they gave her incorrect contact information. *Id.*; *ECF No. 24-3* at 98. She argues that when she tried contacting Sedgwick, they did not respond until after the deadline had passed. *ECF No. 29* at 7; *ECF No. 32-1* at 37. Thus, there are fact issues regarding whether she was given an opportunity to comply because she was given incorrect contact information, and whether she had an adequate amount of time to comply with the request for additional information.

There also are fact issues regarding whether Eriksen was prejudiced by the alleged violations. Wal-Mart argues Eriksen can show no prejudice because she stated she would still be unable to return to work. *ECF No. 24* at 10; *ECF No. 24-3* at 115–116. But Eriksen argues that she may have been able to return to work if she had been granted FMLA leave as requested and allowed to properly recover from her injuries. *ECF No. 29* at 11. She argues that because the leave was

denied, she was forced to continue working, at Wal-Mart and elsewhere, and lost her health insurance. *Id.* She argues all of this prejudiced her and prevented her from recovering as anticipated at the time of her leave request. *Id.* at 9–10. Finally, she alleges she was prejudiced because the denial of her FMLA leave request changed the status of previous absences from work, which meant she was terminated from her employment. *Id.* at 11.

Accordingly, the Court recommends that the motion be denied as to the remaining portions of Eriksen's FMLA claim.

## V. <u>CONCLUSION</u>

Based on the foregoing,

IT IS RECOMMENDED that Wal-Mart's summary judgment motion (*ECF No. 23*) be GRANTED as to Count Two and as to the alleged violations of the FMLA notice provisions contained in Count One, but DENIED as to the remainder of Count One.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof,

or objection is waived. *See Local Rule 72.3.*

DATED this 19th day of February, 2016.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge