IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LORETTA LYNN ERIKSEN,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | CV 14-155-BLG-SPW<br><br>ORDER |

**FILED**

APR 19 2016

Clerk, U.S. District Court
District Of Montana
Billings

Defendant Wal-Mart Stores, Inc. ("Walmart") moved for summary judgment on all of Plaintiff Loretta Lynn Eriksen's claims. (Doc. 23). United States Magistrate Judge Carolyn Ostby issued Findings and Recommendations on February 19, 2016, recommending that the motion be granted in part and denied in part and that this Court set the matter for trial. (Doc. 37). Walmart timely objected to the Findings and Recommendations and is therefore entitled to de novo review of the specified findings or recommendations to which it objects. 28 U.S.C. § 636(b)(1). For reasons stated below, this Court adopts Judge Ostby's Findings and Recommendations in full. Because the parties are familiar with the procedural and factual background of this case, it will not be restated here.

1

I.  **Discussion**

Walmart objects to Judge Ostby's findings that material issues of fact exist with respect to (1) whether Eriksen's FLMA application was for continuous or intermittent leave and whether the initial certification was sufficient; (2) whether Eriksen had an adequate amount of time to comply with the request for additional information following receipt of the incomplete certification; and (3) whether Eriksen was prejudiced by the FMLA violations. (Doc. 38 at 6). The Court addresses the objections in that order.

1.  **Eriksen's FMLA Application**

Construing the facts in the light most favorable to Eriksen, a reasonable jury and not the Court, must decide whether Eriksen sought intermittent leave or continuous leave. First, Dr. Coulson's remarks on the certification form are ambiguous. (Doc. 27 at 34). Dr. Coulson initially checked the "no" box to the question whether Eriksen would be incapacitated for a single period of time, then drew a line through both of the "no" and "yes" boxes and wrote, "Yes, she was – I have not released back to work, but Occ. Health may have." (*Id.*). Then Dr. Coulson drew an arrow to the empty boxes provided for an end date of incapacity and directed the reader to contact Physical Therapy and Occupational Health for details. (*Id.*). No one reading the form knows with certainty whether Dr. Coulson's certification was for intermittent or continuous leave. This is evidenced

2

by the fact that Walmart notified Eriksen that the certification contained insufficient information regarding her anticipated frequency and/or duration of incapacity. (Doc. 49).

Walmart argues that Eriksen specifically requested intermittent leave, so it was not obligated to determine whether her request was for continuous or intermittent leave. (SOF ¶ 44, Doc. 25). Eriksen submitted her initial claim with Walmart's Human Resources employee Jill Hegle, who then notified Walmart's third-party leave administrator, Sedgwick Insurance Company. (*Diop Depo.* 11:24-12:15, Doc. 32-1). At that point, Sedgwick typically sends the employee a medical certification to be completed by the employee's health care provider. (*Id.* at 10:1-6; 19:24-20:3). In the certification, the employee's doctor provides an opinion about the frequency and duration of the employee's required leave. (Doc. 27 at 34). Presumably, Sedgwick's medical certification supersedes the employee's initial oral request for leave because the certification is endorsed by a medical provider and the claim cannot proceed without the certification. (Doc. 27 at 49).

Here, Sedgwick acknowledged that it could not tell if Eriksen had requested intermittent or continuous leave, because Dr. Coulson did not submit a treatment schedule or provide the frequency and duration of her leave. (*Diop Depo.* 23:4-23, Doc. 32-1). A reasonable juror could find that Eriksen may have requested

3

continuous leave or intermittent leave, based on the content of the certification. It is impossible to tell just from the certification, for the reasons discussed above. Dr. Coulson and Eriksen's testimony is critical to the issue. Accordingly, this disputed fact is for the trier of fact to decide.

## 2. Time Frame for Eriksen to Cure Certification Deficiency

Walmart contends that it is undisputed that Eriksen had an adequate amount of time to comply with Sedgwick's request for additional information. The Court disagrees. Regardless of when Sedgwick mailed its request for additional information, Eriksen contends she received the letter just days before she was required to comply. (Doc. 29 at 7). Further, Eriksen contends that Sedgwick gave her incorrect contact information, which prevented her from complying within the time frame provided. (*Id.*; Doc. 24-3 at 98). If in fact Eriksen did not receive the documents until just before they were due, she could not have cured the deficiencies in the time frame Sedgwick provided. Notably, Sedgwick provides for problems such as these by allowing its representatives to extend the deadline for an employee to reply. (*Diop Depo*. 42:10-21, Doc. 32-1). In this case, the Sedgwick representative did not offer Eriksen any type of extension, despite the fact that Eriksen only had a day to comply. (*Id.* at 42:22-43:2). Accordingly, whether Sedgwick allowed Eriksen "adequate" time to cure her certification deficiency is an issue for the trier of fact.

### 3. Prejudice from Denial of FMLA Benefits

Walmart argues that Eriksen cannot establish, as a matter of law, that she was prejudiced by the denial of her FMLA leave. Walmart ignores the disputed issues of material fact that exist with respect to this issue as well. Setting aside any discussion of whether Eriksen's termination triggers the "exacerbation theory," a question of fact exists about whether Eriksen's absences should have been excused under FMLA, which turns on the disputed material facts discussed above. If they should have been excused, Eriksen was undoubtedly prejudiced from the denial of her FMLA benefits, because her absences were not excused and as a result, she lost her job. (Doc. 39 at 11).

Walmart argues that Eriksen can show no prejudice because she would still be unable to return to her employment due to her health condition. (Doc. 38 at 13). Yet, Eriksen argues that if she had been able to take leave, she would not have lost her job and would have been able to treat her condition and ultimately return to work, because she would have had health insurance. (Doc. 29 at 9; Doc. 39 at 10). Judge Ostby correctly determined that these credibility issues are suitable for a trier of fact.

## II. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Judge Ostby's Findings and Recommendations (Doc. 37) are ADOPTED IN FULL.

2. Walmart' Motion for Summary Judgment (Doc. 23) is GRANTED as to Count Two and as to the alleged violations of the FMLA notice provision contained in Count One, but DENIED as to the remainder of Count One.

DATED this 19th day of April 2016.

SUSAN P. WATTERS
United States District Judge